C. BYRD, Administrator, *v.* J. L. C. WELLS.

1. EXECUTORS AND ADMINISTRATORS: STATUTE OF LIMITATIONS: PAYMENT OF CLAIMS BARRED.—Executors and administrators cannot revive a cause of action, which was barred by the statute of limitations at the time of the death of the decedent, or at the time of their qualification.

2. SAME: SAME: SAME: PAYMENT WHEN CLAIM NOT BARRED AT DEATH OF DECE-DENT.—Executors and administrators will be allowed credit for money paid on debts against the estate, which debts were, at the time of payment, barred by the statute of limitations, but not at the time of their appointment.

3. SAME: ALLOWANCE FOR AMOUNT PAID FOR LABOR TO CULTIVATE FARM.—When executors or administrators hire labor for the purpose of carrying on the planta-tion of their testator or intestate, and account for the crops raised, they will be allowed credit for amount paid for such labor.

4. SAME: RIGHT OF EXCEPTION TO FINAL ACCOUNT BY REMAINDERMAN OR REVER-SIONER.—Where property is devised to the widow of testator for her life, and at her death to his children, the children, during the life of the widow, cannot except to an allowance to the executor on behalf of, and affecting alone, the life interest.

APPEAL from the Probate Court of Franklin county. Hon. James M. Jones, judge.

*Potter*, for appellant, as to the statute of limitations, cited 2 Lomax's Exrs. 297; 2 Williams' Exrs. 1635; *Horton* v. *Fucher*, 1 Atkyns, 526; *Chambers* v. *Fennimore*, 4 Harrington, 368; *Walter* v. *Radcliff*, 2 Dessausure, 577; *Williams* v. *Maitland*, 1 Iredell's Eq. R. 100; Wharton's Digest, page 1105, section 615; *Pollard* v. *Sceares*, 28 Ala. R. 484; *Hodgdon* v. *White*, 11 New Hamp. 208.

*L. M. Lee* and *T. & J. Wharton* for appellee.

ELLETT, J., delivered the opinion of the court.

The record shows that Wiley Wells died in February, 1844, and that, in March of that year, John P. Stewart proved his will, and qualified as his executor. In June, 1860, Cornelius Byrd, as administrator *de bonis non* of said Stewart, filed in the Probate Court the final account of said Stewart as executor of Wells. No inventory or report of the personal estate or credits of Wells appears, so far as the record shows, ever to have been made by Stewart; nor did he, so far as appears, ever return an annual or partial account.

John L. C. Wells, one of the children and legatees of Wiley Wells, filed fifty-three exceptions to the final account presented by Byrd, covering a large majority of the one hundred and thirteen items of disbursement charged in the account. Many of these exceptions were sustained by the court, and a restate-ment of the account having been made, a decree was rendered

approving and confirming the restated account. From this decree the accountant has appealed.

The following exceptions were sustained, and the items disallowed in the account, on the ground that they were paid by the executor after they were barred by the statute of limitations, to wit:

1. Exception 2, to the second item of the account for $100, paid H. Cassedy.

It is shown that Magee, Kneass & Co. recovered a judgment on the 16th March, 1847, against Stewart, as executor of Wells, for $176.60, besides costs, and that on the 8th of April, 1854, Stewart paid this sum of $100 to Mr. Cassedy, the plaintiff's attorney, on account of said judgment. Mr. Cassedy testified that after the recovery of the judgment he frequently called on Stewart for the money, who put him off from time to time, promising to pay whenever he got the funds, and that he did at last pay as stated. Also that he made a further payment of $25 on the same judgment, in 1857, which is embraced in item 39.

2. Exception 6, to item 9, for $47.58 paid to O. J. E. Stuart. The voucher is an account of Stuart against the testator, dated November, 1842, probated and allowed in August, 1845, and paid by the executor on the 15th of November, 1848.

3. Exception 26, to item 42, for $150, and exception 31, to item 48, for $175.42, both paid to B. Wade, administrator of Exum. Lewis. It is shown that a claim of Lewis against the testator, for a balance of $598.25, the date of which does not appear, was probated and allowed in April, 1844, and the vouchers for these two items are the receipts of Wade as administrator of Lewis, one dated May 15, 1850, for $175.42, and the other dated June 18, 1852, for $150, on account of said claim.

4. Exception 28, to voucher 34, for $452.25, paid J. T. Lamkin, attorney of Freeman and Co. The vouchers are an account of Freeman & Co. against testator, due May 9, 1841, and a note of testator due August 20, 1838, probated and allowed in September, 1844, with the receipts of Mr. Lamkin indorsed,

one for $150, dated May 25, 1848, and the other for $110, dated November 3, 1849. The proof of payment only goes to $260, instead of $452.25, as charged in the account.

5. Exception 30, to item 46, for $61, paid H. Cassedy. The voucher is the receipt of Mr. Cassedy, attorney for W. J. Proby, for $100, dated November 13, 1850, on a note of testator to Proby, due February 2, 1842, on which there was due at testator's death, the sum of $207.79. The note was not produced, nor does it appear that it was ever probated or allowed; but Mr. Cassedy testified to its existence, and the justice of the claim, and to the fact of payment; and also to the further payment of $100, in 1856, on the same note, and that Stewart had repeatedly promised to pay it.

6. Exception 35, to item 52, for $25, paid December 7, 1849, on a note to J. M. Smiley, due June 1, 1843. It is not shown whether this note was probated, but the witness Jones fully proves its existence, and that it was justly due.

It is insisted by appellant, that the action of the court below in sustaining the foregoing exceptions, was erroneous; and the question is thus raised, whether, under any circumstances, an executor or administrator can lawfully pay a debt against which the period of limitation prescribed by law may appear to have run.

This question does not seem ever to have been decided in this State, though several times alluded to. In *Henderson* v. *Ilsley,* 11 S. and M. 9, it was decided that an executor or administrator cannot bind the estate by a promise to pay a debt barred by limitation, so as to preclude him from pleading the statute in a suit brought against him in his representative capacity; but the question whether, when sued, he is bound to plead the statute, was expressly left open. In *Glenn* v. *Thistle,* 23 Miss. 42, the case of *Henderson* v. *Ilsley* is cited as deciding that " an executor could not, by his promise, revive a debt barred by the statute of limitation; " and, upon the same principle, it was there held, that an assurance given by an executor, to a person about to take an assignment of a note of his testator, that there were no offsets against it, and that it would be paid, would not

preclude the executor, when sued on the note by such assignee, from making any defense against it, that actually existed at the time. In *Pinson* v. *Williams*, the question is again stated to be unsettled. 23 Miss. 64. The case of *Woods* v. *Ridley*, 27 Miss. 119, only announces the general doctrine that an executor or administrator cannot bind the estate by a note signed by him as executor or administrator, but that he only binds himself thereby.

In *Roberts* v. *Rogers*, 28 Miss. 152, the point was made that an administrator was not entitled to credit for debts paid after they were barred by limitation, but the court decided that the statute had not in fact run against the claims there objected to. There is some general language used in that case, from which it might seem to have been taken for granted that, in a proper case, the administrator would be bound to resist the payment of debts barred by the statute; but the question was not involved in the case, and was not decided.

In some of the States it is held that an executor or administrator is not bound to plead the general statute, but is bound to plead the statute that applies to him in that capacity. Ang. on Lim. 195. To this latter class, we suppose, would belong the acts limiting the time for the presentment of claims.

It is clear from these cases, that an executor cannot, by his promise or acknowledgment, revive a debt of his testator that is barred by limitation. And where a debt was barred at the time of the death of the debtor, or at the time of the qualification of his representative, we are equally well satisfied that such representative cannot lawfully pay such debt out of the assets of the estate; and that, if he does pay it, he is not entitled to allowance in his accounts for the money so paid.

But, in regard to debts not barred at the time of the qualification of the personal representative, we are not disposed to adopt so stringent a rule. The executor or administrator represents the deceased, and succeeds him in the management of his estate. The title of the personal property vests in him by operation of law, to be disposed of for the best advantage of creditors and distributees. In the collection of money, and

in the payment of debts, he necessarily possesses a large discretion, to be exercised with prudence and wisdom. The policy of our law has always favored keeping estates together in the hands of the executor or administrator, where there is a probability that the debts and charges may be paid, in a reasonable time, out of the proceeds and profits, and that the estate may be secured to the family, without diminution by sales to pay debts. And where sales become necessary, long credits have been encouraged, so that high prices may be obtained, and sacrifices avoided. Recent legislation has confirmed and extended this policy. To carry it out, indulgence is necessary on the part of creditors; and it is the duty of the administrator or executor to obtain such indulgence if possible. It is important, too, to save costs, and not to subject estates to the expenses of suits at law. And surely the creditor who agrees to wait patiently until the assets of the estate can be realized, ought to be entitled to as much favor as he who commences his suit at the earliest allowable moment, and prosecutes it to satisfaction with unrelenting vigor. It would be a strange rule that would forbid a creditor, on pain of forfeiture of his debt, to be lenient and forbearing towards his debtor, and especially where the debtor is a helpless family, just bereaved of its head. Yet, if an executor or administrator cannot be allowed to pay an honest debt, after the lapse of a particular period of time from its maturity, it is plain that every creditor will be forced to pursue his legal rights with the greatest vigilance and promptness, or lose them altogether. The accumulation of unnecessary costs, and the sacrifice of the interests of heirs, would be the natural effect of such a policy. We think it better that the representative should have as fair and liberal discretion, in regard to the class of cases under discussion, as the debtor would have had if living, to pay such just and legal debts as he may see proper, against which the statute of limitation may have run during his administration. The knowledge that he may do so, will often enable a man of integrity and character to obtain important advantages for the estate he represents; and where he has induced creditors, by

his representations and promises of payment, to abstain from subjecting the estate to the costs of legal proceedings, he ought not to be required to violate his engagements, and to repudiate liabilities which he knows to be honest and just.

We are therefore of opinion that the court erred in sustaining the foregoing exceptions, and that the accountant ought to have been allowed the several sums above stated.

We will proceed to notice a few of the errors complained of, depending on different questions.

Exception 24, to item 39, of the original account, for $95.30, was sustained as to the whole item, except $10. The testimony of Mr. Cassedy shows that two items, composing parts of this voucher, to wit: $34 paid H. Cassedy and Cassedy & Holloway; and $25 paid on claim of Magee, Kneass & Co., were correct, and were paid by the executor. These two sums of $34 and $25 ought therefore to have been allowed in addition to the $10 already allowed.

Exception 32, to item 49, for $138.39, paid W. K. Henry, was sustained, except as to $25.95. The record shows that Henry had a probated claim against the estate for about $151. The receipt of Henry to Stewart is filed as a voucher, dated October 25, 1845, for $138.39, on account of estate of Wiley Wells. It is plain that this item ought to have been allowed for the whole amount, instead of $25.95, and that the exception was improperly sustained.

Exception 36, to item 58, for $175, paid W. Porter for the hire of two slaves for the year 1845. It appears that the testator hired these slaves for the year 1844; that Stewart, as executor, kept all the property together, and carried on the plantation for two years, and furnished supplies for the plantation and for the family of testator ; that he hired these slaves of Porter at the price stated, worked them on the place, paid the hire, and accounted for the crops. Under these circumstances, we have no doubt that he is entitled to be allowed in his account for the money so paid. As the estate had the benefit of the labor of these slaves, it is no more than just that their hire should be paid by it. *Qui sentit commodum, sentire debet et onus.*

But we observe, though our attention has not been particularly called to it, that by the will of the testator the plantation, slaves, stock, etc., were devised to his widow for her life, or during widowhood, and that the proceeds of this property, not required for the payment of debts, belonged to her. She has not excepted to the account, but acquiesces in it. The exceptant is one of the children of testator, who took no beneficial interest in the property until after the death or marriage of the widow. It appears, indeed, that at the time of the trial of this cause in the court below, she was again a married woman; but the date of her second marriage is not shown. We are therefore unable to perceive that the exceptant has any interest in the subject-matter of this exception, which we think was erroneously sustained.

It is not necessary to notice in detail the other errors assigned. We have examined them carefully, and are satisfied that in regard to the other exceptions sustained, the decision of the court below was correct. They involved no questions of interest, but turn mainly on matters of fact regarding the evidence of the claims, and the proof of their payment by the executor.

For the errors we have particularly pointed out, the decree of the court below will be reversed, and the cause remanded for a restatement of the account in conformity with this opinion.